Welcome back, Ms. Gardner. Thank you, Judge. Judge Smith, I know you've written a lot on the inadequate medical claims in the past couple of years. I'd like to talk about the dismissal of the state law claims in this case for a lack of subject matter jurisdiction. That decision to me was particularly confusing and troubling. First off, the district court found that it had subject matter jurisdiction over the claims pursuant to 1367, which is a jurisdictional statute. The district court then went to a Louisiana statute, the Louisiana Medical Liability for State Services Act, and found that that act applies in this case, which had the court not entered its ruling sua sponte and given us an opportunity to brief this, I think I would have had an opportunity to show the court subpart E of that very same statute, which specifically provides that the medical malpractice claims of prisoners relating to health care rendered in a correctional facility and arising under this part shall be submitted to correctional administrative review procedures established for administrative hearings in the correctional environment or established in accordance with express law, including RS 151171 at SEC, RS 49964, and the administrative rules and regulations pertaining thereto. Judge, as you all know, the prisoner litigation is sui generis. Particularly in Louisiana, there's a lot of rules and statutes that specifically control and govern prison litigation. The PLRA itself specifically says that it is the sole remedy for malpractice claims of prisoners. And there's just simply nothing in the Louisiana PLRA that says you have to join the state. So that argument alone, the first argument that the statute even applies here and it's not a general liability claim, I think fails by paragraph E of the very same section which the court relied upon. The district court, however, then went to Rule 19 and found under Rule 19 that there was an indispensable party, the state, and found that because the state was an indispensable party, because it had 11th Amendment immunity, there was no subject matter jurisdiction. So it appears the court was getting in personam jurisdiction mixed up with subject matter jurisdiction. Because certainly 11th Amendment immunity is a personal jurisdiction issue and not subject matter jurisdiction issue. Again, 1367 of the federal rules would control. Now, there's case law that says state courts cannot create rules and statutes that limit the subject matter jurisdiction of a federal court. And the statute that requires joinder of the state, which first we say doesn't apply, is a procedural statute. So a state cannot enact laws that restrict the jurisdiction of the federal courts or restrict the ability of these judges on this bench to hear cases. Obviously, there's jurisdiction, subject matter jurisdiction over the claim. And the state law, if it does apply, which we contend it does not, would have to yield to 1367. So there was subject matter jurisdiction in this case. And the court erred in finding that the medical, I'm sorry, the Malpractice Liability State Services Act applied. And there really isn't a Supreme Court case from the state of Louisiana that says that the MLSSA applies to prisoner claims. So that was kind of an eerie guess on the district court's part in the first place. The district court cited some other district court opinions, but there was no Fifth Circuit. And she admits there's no Fifth Circuit out there, and there's certainly no Louisiana Supreme Court decisions out there. So if the court were to reach this question, they would be, once again, taking an eerie leap or an eerie guess and would say, well, maybe this should be certified to the Supreme Court to see if the MLSSA applies to inmate litigation, particularly subpart A, which says the state has to be joined, where subpart E says you follow the PLRA. So we would ask this court, I know that Your Honor knows we've set out many, many issues of fact, material issues of fact in our briefing with record sites where we thought that material issues of fact precluded summary judgment in this case. I know the court set a very high bar with the Sphinx case that came down, and I know that the first decision was withdrawn, and I think Judge Smith, you wrote the final opinion there, and the bar is just so high on these Eighth Amendment cruel and unusual denial of medical cases. You'd have to be an Olympic pole vaulter to get over the hurdle. So we think this case would get over that hurdle, but we do ask the court to look at this, really, a RAS Nova issue that the district court created sua sponte that I think that the court would have benefited immensely if she'd allowed some briefing on that issue. I'd like to reserve the remainder of my time, Your Honors. Thank you. You've saved time for about a minute, Mr. Gardner. Thank you. Mr. Kastang? Good afternoon, Your Honors. May it please the court. My name is Andre Charles Kastang. I am an assistant attorney general with the state of Louisiana, and I'm here today representing Dr. Bruce Fuller and Dr. Pamela Hearn, who are two doctors at the David Wade Correctional Center, which is a state prison up in northwest Louisiana. And obviously I'm here to ask you to please affirm the dismissal that the district court entered. One, I guess, housekeeping sort of matter. As you can see from the briefs, Dr. Hearn was sued because of two different hats. Some of the claims against Dr. Hearn involved her activities working at the parish jail in Lincoln Parish. She's separately represented by Ms. Sarah White, who's going to argue after me, with regard to the claims that arose out of the jail. If this case had been brought in state court, would it have gone forward? I believe, if I understand Your Honor's question, there would not be an immunity problem. If Mr. Polk had brought the claim in state court, he could have sued the state, who is the only party under substantive state law we get a judgment against on the malpractice claim. And I hate to say that happens all the time, but that's what people do when they sue state doctors. The fact that if we agree with you that this can't be brought in federal court, there is another court that they could have gone in. Yes, this certainly could have been filed in state district court, in Louisiana State District Court. And that would be a yes. I believe, I will address Ms. Grodno's contentions. I think the district court was very correct in finding that these particular claims were covered by the Medical Malpractice with State Services Act. The district court identified the correct law, applied the correct law, and reached a correct result. The particular issue that they point out involves the administrative process that you have to go through under the state malpractice law. Under that law, most people have to go through a medical malpractice review panel before you can file suit. But the particular provision that was cited also says, but if you're a prisoner suing about prison medical care against a prison doctor, go through the prison grievance system. So rather than having to impanel a medical malpractice review panel every time an inmate wanted to sue about prison medical care, they say go through the pre-existing inmate grievance system, which also makes a certain amount of sense that it's within, it's a very limited within the prison aspect. And actually I think that particular provision of the law supports my position fairly strongly because it shows with regard to the administrative requirement before you can file a state malpractice suit, the legislature clearly envisioned that inmate suits were part of this. If they didn't want inmate suits to be part of this, they would have said it in the definitional provisions at the beginning of the statute. They could have put exceptions for prisoners there, exceptions for prison doctors there. But the definition of state medical provider is about as broad as you can get. Any state officer or employee providing medical care as part of their employer's job, their employer's mission, and that includes whether it's one of the LSU doctors or the particular prison providing the medical care to an inmate. So I think that's, and while there may apparently are not any Louisiana state court decisions, I think the statutes, the wording of the statutes is pretty clear. I don't know that it's, I don't think you're really jumping to much of an eerie guess to read the clear statute. And I would point out in terms of waiver, in his original brief, Mr. Poe's argument simply was the second argument they raised here, which is the state can't do it. They didn't contradict or challenge the district court's finding that the statute applied. They merely said either A, the state can't do it, or, but I still have this separate general negligence claim. Then a particular challenge to the district court's finding that the claims here fall under the definitional provisions. And with regard to somehow twisting Louisiana's law in a way to keep these claims out of federal court, I think Judge Wiener pointed out there is a place to file these suits. And that's the same thing as any other kind of claim against the state. You can go to state court, unless you have a case where civil rights, Title VII or something, where Congress has validly waived it. But secondly, it is not a question of required joinder of the state as a defendant. The state of Louisiana, as a part of its substantive tort law, has said that's the only defendant you can get a judgment against. It's not saying that you have to bring the state in with these other parties and to somehow destroy federal jurisdiction. The only defendant you can get a judgment against is the state of Louisiana. Is there an analogous statutory requirement that you have found in the case law, not necessarily Louisiana? I mean, there's at least some initial question about the argument that this is a procedural statute that is altering the way—the effect of it in this case was to alter the way that the federal courts otherwise have handled this. What would you say the best case is to support your view that this is not a procedural rule of Louisiana? Your Honor, I don't think there would be any variety of cases that say who the defendant is. I mean, because they can't get a judgment against the two defendants, the two state doctors. And I can't—I mean, I'll be answering your question, and I can't— Well, you're right to separate out civil rights. Anything constitutional is waived, sovereign immunity. It does seem to me that if you have an actor in the state that harms someone who wants to be a plaintiff, can the state just say in some broad way, just group by group, each of these people you have to sue the state, and you can't sue that individual? And that's entirely too generic for you probably to be able to deal with, but it does raise a concern in my mind of whether—just where this would take us. The state can do this. Well, number one, I would say the state, as a sovereign state, can order its state tort law as it wants. It can even—some states have a pretty broad sovereign immunity that keeps you from filing suit against the state at all. Louisiana has kind of an intermediate waiver. But secondly, my understanding of certain provisions of the Federal Tort Claims Act means that you have to sue the federal government rather than the individual state employee on some tort claims. But that's—Louisiana has a right to order its state tort law and say these are the people you can sue. And unless that violates some substantive constitutional provision, a state has the power to do that. Did the state say whenever you want to sue a county, whenever you want to sue a municipality? It sounds like the state probably wouldn't want to do this, but the state wouldn't be liable for any torts committed by counties. I think, at least in Louisiana, there's some problems because those are separate political—parishes and police juries. Right, and it affects—1983, it affects 11th Amendment. And this is different, but I'm wondering how it's different. Well, I think the difference, if I understand your hypo, there would be— Louisiana cannot alter the definitions of the federal statutes. Louisiana cannot change who is liable under Section 1983 because that's a federal statute and those definitions apply. Secondly, I think the state cannot swoop in and cover another entity with its sovereign immunity in dealing with a federal court issue like that. The state indemnity statute, for instance, the general statute that frequently comes up when you're dealing with regular tort claims against state employees or even 1983 actions, and this might be the better example, the state has said we will represent and indemnify these employees, but it's the employees who stand in judgment in a 1983 suit. The state can't come in and say, well, we're voluntarily covering them and so we shield them from federal lawsuits. The individual is the person under 1983 who is directly liable. And in this situation, it's kind of the reverse because under substantive state law, the state is the entity that is liable under the statute and not the individual. So I think as I've tried to put in my brief, it's not a matter of insurance or indemnity where the state is trying to shield a judgment that's validly entered against the employee. I say, oh, we'll pay it for you. This is you have to get the judgment against the state in the first place and only against the state. I don't know that there's much more substantive law than who you can get the judgment against. And that's just not procedural. That's just not a matter of how you do it. I mean, it's a very basic. You can't. The state is the only entity. You can't sue the state in federal court unless you can't involuntarily hail the state into federal court. And when you get into the subject matter jurisdiction, as the district judge pointed out, it's just not redressable. You can't get a judgment for monetary damages against the two doctors. There's no injunctive relief to issue as he's no longer at that facility. He's actually no longer incarcerated based on my checking with the Department of Corrections. So, I mean, there's no injunctive relief to give against the two doctors. So it's. Do you have any response to the suggestion made a few minutes ago about certifying some of this to the Louisiana Supreme Court? I don't think it's necessary because I think the statute, the medical malpractice, the State Services Act is pretty clear. I think the district court demonstrated that. It's a very clear opinion and I think it hits on all the points that are necessary to hit on in interpreting the statute. So I don't think it's unclear. There is no Louisiana Supreme Court authority supporting this? Correct, Your Honor. There's a Louisiana Supreme Court authority saying that you, if it's covered by the act, that you can only get a judgment against the state. But with regard to the interaction of an inmate's claim and the MMSSA, there is no state case. There is no Louisiana Supreme Court case. Though I would mention again, some of those arguments are beyond the scope of the original brief. The original brief really does go on the assumption that yes, it applies, but then raises this jurisdictional issue that the state can't do this to get rid of federal jurisdiction. And then the issues of that there's some other kind of general negligence claim. But as I attempted to point out in my brief, the cases cited, with that one exception of a pro se inmate case, the cases cited wouldn't fall under that law to begin with because it's either not a state health care provider, not a health care provider, not malpractice. In closing, I'll agree with my opposing counsel, delivering indifference is an extraordinarily high standard. As the Supreme Court has said it, when you have the record that we have here and we raise qualified immunity and brief qualified immunity, their burden to overcome, the deliberate indifference, our assertion of qualified immunity and show deliberate indifference. Unless the court has any questions, I would ask the court to affirm. Thank you. All right. Thank you, Mr. Bustamante. Ms. White. Good afternoon and may it please the court. Sarah White here on behalf of Dr. Hearn in connection with her responsibility at Lincoln Parish Detention Center. And I'm only here to speak with you briefly about a narrow issue really as to whether this is negligence or medical malpractice. As the counsel kind of explained, Dr. Hearn was sued wearing two hats in this case. She provided medical care to inmates at Lincoln Parish Detention Center where she was employed through the parish and acted as a private non-state employee. She was also sued as she provided medical care to inmates at David Wade Detention Center where she was employed to the state. And I think Appellant has even conceded in his reply brief that he did not intend to appeal the dismissal of Dr. Hearn regarding the care she provided at Lincoln Parish Detention Center. But Appellant did appeal the district court September 30th, 2019 memorandum ruling which holds in part that the claims made by Mr. Poe against Dr. Hearn and Dr. Fuller sound in the nature of medical malpractice. And this is significant to Dr. Hearn as the court's subsequent dismissal of her claims against her at Lincoln Parish Detention Center through memorandum rulings on October 1st, 2019 and also on October 20th of 2020 were grounded in the finding that the claims were medical malpractice, not general negligence. And because they were medical malpractice, they were subject to the special statutory provisions of the Medical Malpractice Act as well as the MLSSA. Now the Louisiana Supreme Court has adopted a six-part test to determine whether a claim sounds in medical malpractice and that can be found in the Coleman opinion. That includes whether the particular wrong is treatment-related, whether the wrong requires expert testimony to determine whether there was a breach of the standard of care, whether the pertinent act involved assessment of the patient's condition, whether an incident occurred in the context of a physician-patient relationship, whether the injury would have occurred if the patient had not sought treatment, and finally, whether it was an intentional tort involved in the claim. Now in this instance, Mr. Poe has claimed that he had suffered damages for Dr. Hearn's alleged failure to take away his crutches, to not prescribe crutches, a failure to refer him to an orthopedic specialist for hip surgery while he was at Lincoln Parish Detention Center. And these alleged acts fit pretty squarely within the Coleman factor set forth by the Louisiana Supreme Court and they sound in the nature of medical malpractice. The acts involved Dr. Hearn's professional assessment of Mr. Poe's physical condition, specifically the condition of his hip. The interactions occurred at Lincoln Parish Detention Center with Dr. Hearn working as a physician for the benefit of the inmates there. The alleged acts arose through this physician-patient relationship. The decision to order crutches or order a referral to an orthopedic specialist certainly fall within Dr. Hearn's authority as a physician at the facility. Mr. Poe would have to provide medical expert testimony and indeed tried to do so to establish his burden of proof, especially as to causation, whether any of his alleged damages resulted from the alleged act. And finally, there is a complete absence of evidence in the record that the act, the alleged act, was intentional. The district court correctly found that the negligence claims against Dr. Hearn and Dr. Fuller therefore sounded in the nature of medical malpractice, were subject to those special statutory provisions which included the Medical Malpractice Act while she was working at Lincoln Parish Detention Center, the MLSSA, when she worked at David Wade. And therefore, we would ask that the district court's ruling in this regard be upheld. Thank you, Ms. White. Let me ask one question. Yes, Your Honor. The district court dismissed the case without prejudice. Is that any, does that prolong anything? I think they dismissed it without prejudice in that first ruling. The court left the extended, let us have some additional discovery. We filed a second motion for summary judgment that I believe was unopposed by Mr. Poe, and I believe that final memorandum ruling of October 20, 2020, was with prejudice. Okay. Thank you, Ms. White. Thank you. Ms. Grodner, you've saved some time for rebuttal. Judge Wiener has said a couple of things that I really wish I would have briefed. Dismiss and decline jurisdiction without prejudice was, you know, if the 1983 claims were dismissed, then you can decline under 1367, and that's what the federal law allows. But Judge Wiener asked the question, could the claims have been brought in state court? That sounds like a pretty simple question, but when you look at this, you have federal court, you can bring both claims together, or you should at the same transaction occurrence under 1367. Here, they're saying, well, no, you can't bring the state court claim because state court has a law that restricts jurisdiction of the federal courts. State courts bring both claims, all arising out of the same transaction occurrence, to get around the issue of preclusion, res judicata, restrictions on, you know, having part of your case over here and part of your case over there, some claims here and some claims there. Now, filed in state court, the whole case could have been removed to federal court, and then we'd be back if the courts find that this statute applies, which we believe it doesn't apply, that once again, the state claims would have to be dismissed and brought in another form. Now, so is the answer to Judge Wiener's question, you have to file one case over here and one case over there? I mean, Your Honors know that that's one thing that the rules were designed to circumvent. Now, explain why you would have to file one case in a different place than another. Well, let's say that we filed them in state court and they removed the case to federal court. Who? The defendants under the 1983 claim. They removed it under 1442. The 1983 claim, they moved the whole suit under 1442. So now it's in federal court because we asserted a 1983 claim with the state claim in state court. So now then they come in with the motion to dismiss and say, wait, you can't have this state law claim here because the state has a rule over here that restricts the jurisdiction of the federal court over the state law claim. So that claim is then dismissed without prejudice, and you have to refile it in state court, so you have a claim pending over here and a claim pending over there. And I wish I had briefed that, but I didn't think of that simple question. I do want to go back, Judge Southwick, on the certified question. I think the question would be, it appears, and we did highlight this on page eight of our reply brief, the exact wording, it does appear that prisoner claims are exempted from this state's medical malpractice act under subpart E because it says that prisoner claims follow the administrative rules and regulations under the PLMRA, and there's never been a ruling by the Supreme Court as to whether that means what it says or there's some type of exception to this that the rest of the statute applies. But this statute specifically says, part A, that prisoners fall under the PLRA, and under the PLRA they specifically say prisoner malpractice cases fall under the PLRA, and there's nothing about having to add the state there, this other procedural rule, that's found in the exact same statute but in another subpart. So, thank you all very much for your time. I hope . . . is there . . . did I miss something, Judge Southwick? No. No? We appreciate your . . . Thank you all very much for your time. Thank you, Ms. Goddard. Your case is under submission. Thank you, Your Honor. That's the case for today.